538 S.W.2d 505 (1976)
ARKANSAS SAVINGS AND LOAN ASSOCIATION BOARD and Security Savings & Loan Association, Appellants,
v.
CENTRAL ARKANSAS SAVINGS & LOAN ASSOCIATION, Appellee.
No. 75-293.
Supreme Court of Arkansas.
June 28, 1976.
Smith, Williams, Friday, Eldredge & Clark by William L. Patton, Jr. and Hermann Ivester, Little Rock, for appellant Security Sav. & Loan Ass'n.
Harold E. Anderson, Jr., Little Rock, for appellant Arkansas Sav. and Loan Ass'n Bd.
Lester & Shults by Edward Lester, Little Rock, for appellee.
BYRD, Justice.
This application for a savings and loan charter by appellee, Central Arkansas Savings & Loan Association, was before us in Ark. S&L Bd. v. Central Ark. S&L, 256 Ark. 846, 510 S.W.2d 872 (1974) and in Security S&L v. Central Ark. S&L, 257 Ark. 1014, 521 S.W.2d 220 (1975). On the first appeal we remanded the case to the Arkansas *506 Savings and Loan Association Board because, in denying appellee's application, the Board had only stated conclusions and had failed to give findings of fact. On the second appeal appellant Security Savings and Loan Association, whose protest had been sustained by the Board, complained that its appeal to the Pulaski Circuit Court was erroneously transferred to the Faulkner Circuit Court. Following those decisions, on this appeal the Faulkner Circuit Court again reversed the action of the Board in denying appellee's application for a charter. For reversal, appellants, Arkansas Savings & Loan Association Board, hereinafter referred to as the Board, and Security Savings & Loan Association, hereinafter referred to as Security, contend that the findings of the Board are sustained by substantial evidence.
In making their contention, appellants take the position that, for purposes of determining whether the Board's administrative findings are supported by substantial evidence, we should be governed by the same rule of review as in cases involving jury verdicts. In this connection appellants state:
"Because of this holding the evidence which tended to support a finding that a public need and probability of success did exist is irrelevant and was not included in the abstract."
With respect to judicial review of administrative findings our Administrative Procedure Act, Ark.Stat.Ann. § 5-713 (Supp.1973), provides:
"...
(g) The review shall be conducted by the court without a jury and shall be confined to the record, except that in cases of alleged irregularities in procedure before the agency, not shown in the record, testimony may be taken before the court. The court shall, upon request, hear oral argument and receive written briefs.
(h) The court may affirm the decision of the agency or remand the case for further proceedings. It may reverse or modify the decision if the substantial rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
(1) in violation of constitutional or statutory provisions;
(2) in excess of the agency's statutory authority;
(3) made upon unlawful procedure;
(4) affected by other error of law;
(5) not supported by substantial evidence of record; or
(6) arbitrary, capricious, or characterized by abuse of discretion."
The provisions of the federal Administrative Procedure Act were discussed in Universal Camera Corp. v. National L. R. Bd., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1950), with reference to whether a review of an administrative decision based upon the substantial evidence rule could be predicated upon only the evidence supporting the administrative finding when viewed by itself. In holding that such a review should be on the record as a whole, the court said:
"Whether or not it was ever permissible for courts to determine the substantiality of evidence supporting a Labor Board decision merely on the basis of evidence which in and of itself justified it, without taking into account contradictory evidence or evidence from which conflicting inferences could be drawn, the new legislation definitely precludes such a theory or review and bars its practice. The substantiality of evidence must take into account whatever in the record fairly detracts from its weight. . . ."
Under the language of the Administrative Procedure Act, supra, we construe the language thereof to give to the courts the same type of review that is applied by the federal courts to the federal Administrative Procedure Act.
The order entered by the Board following the remand of the first appeal is as follows:
"The Board, upon review of the record, finds that the application should be denied for the following reasons:

. . . . .
*507 3. There is not a public need at the present time for the proposed association and the volume of business in the areas in which the association would conduct its business is not sufficient to indicate a successful operation.
The Board hereby makes the following findings of underlying facts upon which this finding is based:
(a) Conway and Faulkner County are within the metropolitan Little Rock trade and market area and a substantial number of Faulkner County residents commute to work in Little Rock and Pulaski County.
(b) There is keen competition for home loans in Conway and Faulkner County by Security Savings & Loan Association of Conway (`Security'), Morrilton Federal Savings & Loan Association (`Morrilton Federal'), the two banks in Conway, savings and loan associations from the Little Rock area, and other institutions from the Little Rock area. The approval by the Federal Home Loan Bank Board of the branch office of Morrilton Federal will increase this competition. There is no need for additional competition for home loans and the volume of home loans is not sufficient to support additional competition.
(c) There is keen competition for savings deposits from Conway and Faulkner County residents by Security, the two banks in Conway, and thrift institutions in Pulaski County. Morrilton Federal has competed for savings deposits from Conway and Faulkner County residents to some extent in the past and will compete for such savings deposits to a much greater extent with the establishment of its branch office in Conway. Thrift institutions in Pulaski County obtain significant amounts of savings from residents of Faulkner County who commute to work in Pulaski County during the normal operating hours for financial institutions. There is no need for additional competition for savings and the volume of savings is not sufficient to support additional competition.
(d) From the standpoint of the services offered to Faulkner County residents, and in light of the services provided to Faulkner County residents in the past, and in view of the relative geographic locations of Morrilton and Conway, the establishment of Morrilton Federal's Branch office in Conway will be comparable to the establishment of a second association in Conway.
(e) The populations of Conway and Faulkner County are not large enough to support an additional association.
(f) With the establishment of an additional association the population per savings and loan association office in Faulkner County would be 10,524 compared to a range from a low of 12,180 to a high of 33,256 for the eight market areas covering the state as defined by Dr. Gene C. Lynch. Without the establishment of an additional association the population per savings and loan association office in Faulkner County will remain at 15,786, which figure falls within the existing range for the above market areas. (All population figures used in these findings are based on the 1970 census).
(g) With the establishment of an additional association the population per savings and loan association in Faulkner County would be 15,786, compared to a range from a low of 17,826 to a high of 39,908 for the above market areas. Without the establishment of an additional association the population per savings and loan association in Faulkner County will remain at 31,572, which figure falls within the existing range for the above market areas. The figures for population per savings and loan association are inflated because they do not take into account the fact the Morrilton Federal's Conway Branch is comparable to a local association under the peculiar circumstances recited in finding D.

*508 (h) The age group 15 to 24 makes up 24.9% of the population of Faulkner County and approximately one-third of the population of Conway while the corresponding figure for the state as a whole is 16.9%. The difference in these two figures is the result of the presence of three colleges in Conway. Persons in this age group do not, in general, utilize the services of savings and loan associations. For purposes of comparing population per office and per association in Faulkner County and in the above market areas the population figure for Faulkner is inflated by 8%.
(i) Security was formed and commenced business in 1961. Security's performance in attracting savings since its formation has been excellent. During the period 1965-1970 Security obtained savings deposits at a rate of 128% of the national average (based on the comparison of the amount of increased personal income that went into savings deposits in savings and loan associations for the nation as a whole and for Faulkner County). During the period 1966-1970 all savings and loan associations in Arkansas as a whole obtained savings at a rate equal to 124% of the national rate.
(k) In 1971 and 1972 the increase in Security's deposits was significantly more each year than it had been in any previous year. While the rate at which Security's deposits increased during these two years fell below the national average this can be attributed to a reduction in Security's advertising budget which has since been restored and the impossibility of accounting for deposits of local income in Pulaski County savings and loan associations and Morrilton Federal. Each dollar of local income in these institutions has the same significance as a dollar deposited in Security in making the local to national comparison.
(l) The establishment of Morrilton Federal's branch office in Conway will place Morrilton Federal in a position to attract significant amounts of savings deposits from Faulkner County residents that it would otherwise be unable to attract.
(m) Per capita income for Faulkner County is $2,602 and for the state as a whole is $2,791.
(n) The performance of Security and Morrilton Federal in meeting home loan needs in Faulkner County has been excellent. Faulkner County residents who finance homes through institutions in Little Rock generally do so for personal reasons having nothing to do with the adequacy of services or amount of financing available locally.
(o) During the period 1968-1972 Security financed over 93% of the value of new residential construction in Conway, while savings and loan associations nationally financed 81% of the value of new residential construction.
(p) The two Conway banks actively seek home loans, primarily on a short term basis of five years or less. Persons obtaining home loans from the banks on these terms generally do so because they prefer such terms or for other personal reasons having nothing to do with the adequacy of services or amount of financing available from the savings and loan associations.
(q) Security's services regarding home loans are speedy and adequate and, except for an unusual period during which adequate amounts of money for home loans were unavailable on a national basis, Security has always had money available to lend to qualified borrowers.
(r) Interest rates charged by Security for home loans are competitive with other financial institutions which make home loans in Faulkner County.
(s) Morrilton Federal has filled a major portion of the loan needs of Conway and Faulkner County residents for many years, commencing a number of years prior to the formation of Security in 1961. The establishment of Morrilton *509 Federal's branch office in Conway will enable it to service a larger number and amount of loans.
(t) General economic conditions are highly unfavorable to the establishment of a new savings and loan association at this time. Conditions regarding interest rates are highly unfavorable to the inflow of deposits to savings and loan associations and conditions in the home construction industry are highly unfavorable to prospects for future building activity.
(u) The economic data presented by the applicant did not take into account the impact that Morrilton Federal's branch office in Conway will have on the Faulkner County economy, the extent to which the branch will fill the need for the services offered by savings and loan associations or the extent to which it will affect the applicant's chances for a successful operation. The economic data and statistics also inaccurately classify Morrilton Federal as an outside institution when it will provide the same services to Faulkner County residents as a local institution and has to some extent done so in the past.
(v) The economic data presented by the applicant contain a number of errors that make portions of it unreliable and raise doubts as to the other portions. The economic data presented by Security does not contain such errors and is entitled to greater weight.
(w) The opinions given by Dr. Lewis Amis on behalf of the applicant were not supported by a satisfactory explanation of the underlying facts and should not be given substantial weight. Dr. Amis established that he was not familiar with economic conditions in Faulkner County and his cross-examination raised serious doubts as to the validity of the economic data presented by the applicant, especially the statistics relating to mortgage loans.
(x) A sufficient basis for comparing the present application with applications for charters previously granted was not established.
4. The operation of a new association in Conway, Arkansas, will not unduly harm any other existing association or federal savings and loan association or any other financial institution.
The Board hereby makes the following findings of underlying facts upon which this finding is based:
(a) The two banks in Conway did not contend that they would be unduly harmed by the establishment of the proposed association.
(b) The operation of a new association in Conway would result in existing and future deposits and future loans being spread among a larger number of financial institutions, but the operation of a new association in Conway would not result in undue harm to the service area in that the harm would not be severe enough to render the existing institutions incapable of functionally continuing operation.
. . . . .
IT IS THEREFORE ORDERED that the Application for Charter by Central Arkansas Savings and Loan Association be and it is hereby denied."
The record shows that a total of 59 stockholders subscribed and paid $231,150.00 in cash for 13,400 shares of stock in appellee. The subscribed savings accounts had increased to $1,120,345.00 at the date of the hearing of the application. Ten new industries and 14 new commercial establishments were opened for business in 1972. The 1960 census of Faulkner County showed a population of 24,303 while the 1970 census showed a population of 31,472, representing a 29.9% increase in the population of the county compared to a state-wide increase of 7.7%. Between 1960 and 1970 the personal income of the county increased from $30.3 million to $82.1 million. The total payroll for the same period for covered employment increased 94.3% or from $8.8 million to $25.1 million. Concurrently, the average *510 covered payrolls for the manufacturing industry increased from $4.3 million to $13.2 million, a 205.2% gain. For the same ten year period, retail sales increased from $18.3 million to $46.0 million. Income from governmental employment increased from $3.3 million to $11.8 million. In 1970 the total deposits in banks in the county were $40.9 million, and of those deposits, $22.6 million were in savings and time deposits. Total deposits in the banks had increased to $68,964,000 by December 31, 1972. The savings capital of Security increased from $5,759,854 in 1967 to $12,045,000 by June 30, 1972. The number of persons on institutional and industrial payrolls increased from 1,709 in 1960 to 6,245 in 1971. The electrical connections inside the city of Conway increased by 190 in 1971 and by 100 in 1972. In Faulkner County, outside the city of Conway, there was an increase of 274 electrical connections in 1971 and of 393 in 1972.
Security is the only chartered savings and loan association in Faulkner County. Security's deposits were increased by $1,638,000 in 1971, and $2,801,000 in 1972. Dr. John Kane, professor of Economics at the University of Arkansas and former executive vice president of the McElroy Bank in Fayetteville, testified that in Boone County in 1972, the Harrison Savings and Loan Association increased its deposits by $5,346,000 and a second association in Harrison increased its deposits by $2,612,000. The First Federal Savings and Loan Association of Magnolia in 1972 increased its deposits by $3.75 million. The First State Savings and Loan Association of Mountain Home in 1972 increased its deposits $7,671,000. First Federal Savings and Loan Association of Rogers in 1972 had an increase of $6,999,000. The deposits in First Federal Savings and Loan Association of Russellville did not quite increase $3 million in 1972, but a second association in Russellville had an increase of $1,564,000 for a total county increase of $4,765,000 in savings and loan deposits. The two associations in Searcy had an increase of $3,860,000 for the same year.
Table 13, 13A, 13B and 13C, attached as an appendix to this opinion, were introduced by Dr. Gene Lynch, who testified for Security. Table 15, shown in the appendix to this opinion, was introduced by Dr. Louis Amis who testified for appellee.
Security was chartered in 1961 with a capital of $250,000. After six months operation it had assets of $645,000, savings of $465,000 and first mortgage loans of $423,000. At the end of 1972 Security had total assets of $14,173,298, savings of $13,269,691 and first mortgage loans of $11,847,387. Security's undivided profits in 1972 were $129,000 after taxes.
George Shaw, Jr., testified that he was a director of Security. He owns 10% of the stock in the association, and his family owns another 10%. He testified that when Security started Morrilton Federal Savings and Loan Association conducted the principal savings and loan activity in Conway. That of Morrilton Federal's 100% of the market he would now say that Security has 70% and Morrilton Federal has 30%.
Arch Ford, a director and founder of Security, estimated that in 1972 Morrilton Federal made loans of about $1,600,000 to $1,800,000 in Faulkner County while Security made loans of about $2,500,000.
Between the date of the application for appellee's charter and the hearing date, Morrilton Federal obtained a federal charter for a branch bank in Conway. Security elected not to protest the application of Morrilton Federal for the branch bank.
In the first appeal we remanded this case to the Board because the findings of fact did not comply with the Arkansas Administrative Procedure Act, Ark.Stat.Ann. § 5-710 (Supp.1973). Insofar as here pertinent, that statute provides:
"(b) In every case of adjudication, a final decision or order shall be in writing or stated in the record. A final decision shall include findings of fact and conclusions of law, separately stated. Findings of fact, if set forth in statutory language, shall be accompanied by a concise and *511 explicit statement of the underlying facts supporting the findings. . . ."
In stating our reasons for remanding to the Board, we pointed out that the record contained "not only what appears to be basically factual testimony but also what appear to be conclusions on the part of witnesses." A clear example of what happens when the Board does not analyze the testimony in connection with its fact findings can be demonstrated by the conclusions set forth in subsections (o) and (r), supra.
In subsection (o) the Board states that "Security financed over 93% of the value of new residential construction in Conway, while savings and loan associations nationally financed 81% of the value of new residential construction." This information could only come from the testimony of Dr. Lynch, who relied upon Tables 13, 13A, 13B and 13C. (See appendix.) Since Table 13 represents only the residential construction done inside the city and since Table 13A represents the total loans made by Security both inside the city of Conway and outside of the city in Faulkner County, the 93% figure can only be computed by presuming that the total loans by Security from 1968 through 1972 were made only inside the city of Conway. Needless to say, the statement in subsection (o) of the Board's order is so erroneous that its error was admitted during oral argument.
In subsection (r) the Board states that "interest rates charged by Security for home loans are competitive with other financial institutions which make home loans in Faulkner County." In this connection George Shaw, Jr., a director of Security, after stating that Security's rates were competitive, stated:
"I'm basing my statement that our rate was competitive with Morrilton Federal and the associations in Little Rock on the results of our loans here."
However, John Shock, a certified public accountant, testified that the loan on his home was not with Security because he was told that security's interest rate was "8%, take it or leave it." Shock financed his home with Morrilton Federal at a lower rate. The testimony of John Shock is corroborated by that of Security's manager, who admitted that in new subdivision containing 50 or 60 homes, Security only made loans on 10 homes in that subdivision. He stated that one reason for Security's not having more loans in the subdivision was its interest rate.
Security suggests that the granting of Morrilton Federal's branch charter should be considered as, in effect, creating another savings institution. However, Security's failure to protest Morrilton Federal's branch charter while protesting appellee's application places Security in the position of admitting that there is room for additional competition in the area but leaves it in the position of selecting its own competition. That the actions of Security speak louder than words on that issue can be seen from the testimony of its manager, Mr. Sly, as follows:
"Q. Do you not believe that this will add to the competitiveness of Morrilton Federal?
A. I don't think there's any question about it. I don't think it will hurt our savings. And this isI don't know how to word it exactly. I worry more about our lack of savings than I do our availability of loans. I don't think Morrilton will hurt us on savings as much as maybe the banks would or another local savings and loan. But I think loans, they're going to get those anyway. I don't think there's going to be that much difference in what they have been doing just by opening an office here."
Needless to say, the statements of the Board, when viewed from the whole record as distinguished from the conclusions of certain witnesses, are such that they show an abuse of discretion in the consideration of the evidence before the Board.
To take each subsection of the Board's order and demonstrate how the Board has abused its discretion, including such things as comparing the population of Faulkner County to a market area covering some five counties, including Pulaski Countywhich *512 is like comparing apples to orangeswould make this opinion longer than appellant's brief, which consists of 280 pages. What we have set forth demonstrates that the Board abused its discretion and also violated its statutory duty to make "a concise and explicit statement of the underlying facts supporting the findings." For the violation of the Board's statutory duty, we remanded this case on the first appeal. However, to remand again would but reward the Board and Security by giving them another two years in which to delay the appellee's application for a charter. As pointed out by Mr. Justice Frankfurter, in Universal Camera Corp. v. National L. R. Bd., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1950), "Reviewing courts must be influenced by a feeling that they are not to abdicate the conventional judicial function."
When we consider that the statistics show a steady and vigorous industrial growth in Faulkner County; that Security, while obtaining loans in new subdivisions at a rate of only one out of every five or six new homes constructed, had been continuously loaned up for the last six or seven years; and that Morrilton Federal was doing less than one-half of the business done by Security, we cannot find enough substantial evidence in the record to support the Board's finding that there was not a public need for and that the business in the area was not sufficient to support the successful operation of appellee.
Security also contends that the Board erred in finding that the operation of a new savings and loan association will not unduly harm any other existing association or other financial institution. We find no merit to this contention. In fact, there does not seem to be any substantial evidence to the contrary. The evidence of Security shows that it has had a steady increase in income and that its present annual income, after taxes, exceeds 50% of the original investment. Then too, there is the admission that Security only obtained one loan for each five or six homes built in a new subdivision.
Affirmed.
FOGLEMAN, J., dissents.

 APPENDIX
 Table 13
 RESIDENTIAL CONSTRUCTION
 CONWAY, ARKANSAS 1968-1972
 Units Authorized
Year One family Multi-family Total value
1968 64 units 44 units $1,168,000
1969 66 13 847,000
1970 73 6 1,204,000
1971 102 8 2,004,000
1972 107 60 3,215,000
Total
1968-1972: 412 units 131 units $8,438,000

 Table 13A
 LOANS MADE IN FAULKNER COUNTY
 (PRIMARILY CONWAY)
 BY SECURITY SAVINGS AND LOAN
 Year Loans
 1968 $1,448,750
 1969 1,102,600
 1970 762,800
 1971 2,128,100
 1972 2,446,425
 Total $7,888,675

*513
 Table 13B
 VALUE OF NEW RESIDENTIAL CONSTRUCTION
 IN THE UNITED STATES
 AMOUNTS FINANCED BY SAVINGS AND LOAN
 ASSOCIATIONS
 Value of new Loans closed by Percent
 residential savings & loan financed by
 construction associations savings & loan
 Year (billions) (billions) associations
 1968 $30.6 $21.3 69.6%
 1969 33.2 21.8 65.6
 1970 31.9 21.4 67.0
 1971 43.1 39.5 91.6
 1972 53.9 51.4 95.3
 Total $192.7 155.4 80.6%

 Table 13C
 VALUE OF NEW RESIDENTIAL CONSTRUCTION,
 CONWAY, ARKANSAS
 (THOUSANDS)
 Loans closed by
 Security Savings &
 Loans closed by Loan as a percentage
 by Security of new Conway residential
 Year Value Savings & Loan constr.
 1968 $1,168 $1,449 124.0%
 1969 847 1,103 130.2
 1970 1,204 763 63.3
 1971 2,004 2,128 106.1
 1972 3,215 2,446 76.0
Table $8,438 $7,889 93.4%

 Table 15
 COMPARISON OF LOCAL SAVINGS AND LOAN MORTGAGE
 LENDING TO OUTSIDE SAVINGS AND LOANS LENDING IN
 FAULKNER COUNTY, 1967-1971
 Local Savings & Loan Outside Savings & Loans All Savings & Loans Local as Percent of
Year Number Value Number Value Number Value All Savings & Loans
1967 50 $ 687,750 19 $ 301,550 69 $ 989,300 69.5
1968 100 1,518,814 25 1,023,750 125 2,542,564 59.7
1969 75 1,173,300 40 613,861 115 1,787,161 65.7
1970 58 812,730 21 1,994,899 79 2,807,629 28.9
1971[*] 49 934,650 219 6,701,597 268 7,636,247 12.2

FOGLEMAN, Justice (dissenting).
I might feel that I am doing no more than again voicing my protest previously expressed in such cases as Arkansas Savings & Loan Association Board v. Corning Savings & Loan Ass'n, 253 Ark. 987, 490 S.W.2d 460; Arkansas Savings & Loan Association Board v. Grant County Savings & Loan Ass'n, 256 Ark. 858, 510 S.W.2d 863, were it not for the fact that the majority has ignored our own statement as to substantial evidence review in favor of that of another court which is in decided conflict with our own rule. In First Federal Savings & Loan Ass'n v. Union Fidelity Savings & Loan Ass'n, 257 Ark. 199, 515 S.W.2d 75, decided November 4, 1974, and where we were cognizant of the Administrative Procedure Act, we said:
The appellant recognizes our rule that in this type case we affirm the Board's action if there is any substantial evidence *514 to support its findings. Morrilton Fed. S&L v. Arkansas Valley S&L, 243 Ark. 627, 420 S.W.2d 923 (1967). Furthermore, in determining if substantial evidence exists, we consider only the appellee's testimony or that evidence adduced which is most favorable to the appellee. Baldwin v. Wingfield, 191 Ark. 129, 85 S.W.2d 689 (1935); and Washington Natl. Ins. v. Meeks, 252 Ark. 1178, 482 S.W.2d 618 (1972). In the case at bar, when we consider the evidence with all reasonable inferences deducible therefrom in the light most favorable to the appellees, as we do on appeal, we are firmly of the view there is substantial evidence to support the Board's findings.
Not only is that authority ignored, the majority has acted to the contrary. While I will continue my protest as long as I feel that the courts are invading the province of other agencies, I submit that if our own approach to determining substantial evidence is followed in this case, the result reached by the majority is not possible.
I think I should also point out that there is a very significant difference between the statute considered in Universal Camera Corp. v. National L. R. Bd., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1950), relied upon by the majority, and our own act. This decision, in itself, was a departure from previous practice of that court. This, however, was accomplished by legislative mandate which was based upon dissatisfaction with the substantial evidence rule as it previously existed. It required that substantial evidence determinations be made by consideration of the record as a whole in both the Administrative Procedures Act and the Taft-Hartley Act. The United States Supreme Court frankly stated that these acts were demonstrative of a legislative mood, which must be respected by the judiciary, when expressed in legislation. But the "new legislation" upon which the court acted, after it had found that the Administrative Procedure Act actually contained the clear expression of legislative intention in both acts, is far different from our own Administrative Procedure Act. The federal act contained and still contains the critical language which required the change of stance of the United States Supreme Court. As recited in 5 U.S.C.A. § 706, it reads:
In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.
Significantly, this language is absent from our Administrative Procedure Act, adopted after the United States Supreme Court decision. Its omission should mean that the General Assembly was satisfied with substantial evidence determinations as made under the traditional rule we so recently expressed. It seems to me that this court is in poor position to take such a drastic step based upon the authority of a case which simply recognized the legislative prerogative, particularly when our General Assembly deliberately omitted the mandate upon which that authority is based. The result of such action was aptly expressed in the cited case thus:
We conclude, therefore, that the Administrative Procedure Act and the Taft Hartley Act direct that courts must now assume more responsibility for the reasonableness and fairness of Labor Board decisions than some courts have shown in the past. Reviewing courts must be influenced by a feeling that they are not to abdicate the conventional judicial function. Congress has imposed on them responsibility for assuring that the Board keeps within reasonable grounds. That responsibility is not less real because it is limited to enforcing the requirement that evidence appear substantial when viewed, on the record as a whole, by courts invested with the authority and enjoying the prestige of the Courts of Appeals.
I respectfully submit that the majority has arrived at its conclusion only by picking fragments of testimony that would have supported a result contrary to that of the Board. This approach is even more revolutionary than would be the case if it had *515 simply weighed the evidence on trial do novo. Even though done unconsciously, this is not the purpose of judicial review of administrative action. The effect of utilizing this type of review is to substitute the judgment of the court, which is without expertise on the subject, for that of the Board, which presumably is possessed of expertise. This approach was disavowed in Arkansas Savings & Loan Board v. Southerland, 256 Ark. 445, 508 S.W.2d 326, where we reversed the action of the circuit court, which had done exactly what this court is doing in this case in reversing the action of the Board.
I do not agree with appellants that the finding of the Savings & Loan Association Board that the operation of a new savings and loan association in Conway will not unduly harm any other financial institution is not supported by substantial evidence, whether the Board's definition of undue harm was correct or not. However, I am unable to fathom the reasoning process by which the majority concluded that the Board erroneously found that there was no public need for the proposed savings and loan association and that the volume of business in the area in which the association would conduct its business was not sufficient to indicate a successful operation. The Board made numerous specific findings by which its conclusion was reached. The weakening or elimination of one of them does not destroy the foundation of substantial evidence on which the conclusion was reached. I submit that the majority has done nothing more than attempt to demonstrate the weakness of one or more of those numerous findings, as if the Board's conclusions were a three-legged stool, which would fall if one leg was sawed from under it. If those particular findings are eliminated, there is still a foundation for the ultimate holding. For instance, short of trial de novo by the courts, no amount of picking at minute details in expert and other testimony will destroy findings of underlying facts (a), (b), (c), (d), (h), (i), (l), (m), (n), (p), (q), (r), (s), (t), (u), (v) and (x), all of which are supported by substantial evidence. These seem to be actually supported by a clear preponderance of the evidence. Furthermore, there is no proper approach for our saying that (w), a matter clearly within the province of the Board, was incorrect, arbitrary, capricious or an abuse of the Board's discretion. They simply found Dr. Lynch's testimony plausible and that of Dr. Amis entitled to little weight.
Morrilton Federal Savings & Loan Association had been in business 20 years and had 100% of the home loan market when Security Savings & Loan Association was founded. In the succeeding years, the ratio had become 70% by Security and 30% by Morrilton, excluding some 25% to 30% handled by other lending institutions. Morrilton had obtained approval of a branch office in Conway. The convenience of having this office will necessarily make this association much more competitive both in making loans and obtaining savings deposits, as many witnesses testified. In addition, there was testimony that the Morrilton association had stepped up its activities in Faulkner County and that three employees were actively soliciting business there. Obviously, there was basis for belief that the new branch office presented some of the aspects of a new savings and loan association in Faulkner County. The failure of Security to carry through on its protest of the branch office was explained and is understandable. Morrilton was already in business in Faulkner County and was seeking to retrieve business it had lost to Security. Security would have been in poor position to continue its protest.
I submit that there was evidence other than that pointed out in the majority opinion, that Security's loan interest rates were competitive, even though there was some controverting evidence. But it would serve no useful purpose to go through the record and point out factors that subject the analysis made of the evidence in the majority opinion to question. I would point out that no statistical yardstick has been established for making the determinations intrusted to the Board. I must point out some significant *516 factors that furnish a basis for the Board's action that have been ignored.
First, it was clearly shown that population figures relative to Conway and Faulkner Counties furnished a poor standard of comparison because college students comprise about one third of the population of Conway. Second, the growth rates of the county have declined. Third, Pulaski County institutions compete with Faulkner County institutions for both loans and savings dollars, and will continue to do so. Fourth, the banks in Conway are highly competitive for residential loans, because they are helpful in assuring that the borrowers will otherwise be their customers, and some borrowers prefer a one to five year loan with periodic payments no higher than on a long term loan, but with a "balloon" note for the bulk of the loan. This permits the borrower to readily renegotiate interest rates from time to time and to make larger payments of principal whenever advantageous to him. Fifth, home building was on a definite decline due to shortage and high cost of building materials and builders and developers were finding building of houses for the market less profitable. Probably the largest developer was phasing out its business. Others were building fewer houses. A trend to apartment living was noticeable. Sixth, the Quitman Bank and FHA and VA make residential loans in the county. Seventh, the attractiveness of putting savings into a savings and loan association was diminished because of money market conditions, which made other investments more attractive.
Every one of these factors was important to the determination of both public need and probability of success. They themselves furnish a very substantial basis for, not only the opinion of Dr. Lynch, an eminently qualified economist, but also for the findings of the Board, which was in these respects exercising its expertise.
I must also disassociate myself from the insinuation that the Board is acting to delay appellee's application.
I would reverse the action of the circuit court.
NOTES
[*] Through October 31, 1971