BANK OF WALDRON *v.*
SCOTT COUNTY BANK, Et Al

79-165                                                    590 S.W. 2d 654

Opinion delivered December 17, 1979
(In Banc)

408

*Friday, Eldredge & Clark,* by: *Hermann Ivester,* for appellant.

*Rose, Nash, Williamson, Carroll, Clay & Giroir,* by: *William H. Kennedy, III,* for appellees.

FRANK HOLT, Justice. Following a hearing, appellee Arkansas State Banking Board, the appellee State Bank Commissioner concurring, approved a charter application submitted by appellee Scott County Bank for location of a bank in Waldron. At a meeting approximately six weeks later, the Board formally approved the charter and adopted written findings of fact and conclusions of law. The circuit court affirmed the Board's action. Hence this appeal.

At the end of a one day hearing, the Board immediately

rendered its 3-2 decision approving the application. The thrust of appellant's first argument for reversal is that in doing so the Board did not make a sufficient study of the mass of exhibits and data presented by both sides at the hearing before rendering its decision. In other words the Board members could not adequately absorb all of the material presented to justify an immediate decision without discussion and deliberation.

The members of the Board had appellee bank's application and supporting data for individual study approximately five months before the hearing. The Board had allotted two days for the hearing. However, at the close of the first day, the appellant stated that any additional evidence "would probably be cumulative." "The extent to which an independent study of the evidence in the record is necessary to the required exercise of informed judgment must be left to the wisdom and practical good sense of the agency." 2 Am. Jur. 2d Administrative Law § 439. Here the evidence presented at the hearing, including various economic reports and the oral testimony, does not appear to be of a highly technical or complex nature in view of the experience and expertise of the members of the Board. Although the decision to approve the application was made immediately following the presentation of the evidence, we cannot say that it is demonstrated the Board failed to adequately consider the evidence. Accordingly, we hold the Board's decision was not arbitrary and capricious, did not deprive the appellant of due process, was not an abuse of discretion, nor was it in violation of Ark. Stat. Ann. § 67-303.1 (Supp. 1979), which only requires "consideration" of certain factors by the Board.

Appellant's second contention is related to the first and is also without merit. It argues that the Board's failure to allow appellant to respond to the proposed findings of fact submitted by appellee bank or to be heard with regard thereto and the Board's adoption of the proposed findings in toto, was arbitrary and capricious, was an abuse of discretion, and was in violation of appellant's due process rights and Ark. Stat. Ann. § 5-710 (b) (Repl. 1976). Appellee applicant, as the prevailing party, submitted proposed findings of fact and conclusions of law. Appellant admits that its coun-

sel was provided with a copy of this proposed document ten days prior to the scheduled hearing. Its counsel had requested a hearing before any findings be approved by the Board. Unfortunately, appellant's counsel was seriously ill when the proposed document was received. His partner communicated a request for a postponement of the hearing. Appellant did not submit any modifications or comments to the proposed findings or any findings of its own. Neither did its counsel, who was ill, attend the scheduled hearing. The Board, after considering the evidence and reaching the same findings and conclusions, is not prohibited from adopting the proposed findings of fact. § 5-710 (b). Further, we note that the proposed findings and conclusions were not adopted in toto but were revised to a limited extent by the Bank Department before submission to the appellant and the Board for its approval. Postponement of the scheduled hearing, of course, was within the discretion of the Board. In the circumstances we find no improper action on the part of the Board or a violation of any of appellant's rights when the Board adopted, at its scheduled hearing, the proposed findings of fact and conclusions of law.

Appellant's third contention, admittedly inherent in the first two arguments, is that the Board and the Commissioner failed to rule on each proposed finding of fact as required by § 5-710 (b). In view of our previous discussion, it is clear that the Board complied with this statute.

Appellant next contends that the administrative decision is not final until its petition for rehearing is disposed of by the Board and the Commissioner. Eight days after the initial hearing, appellant filed a petition for a rehearing asking the Board to make specific rulings on each proposed finding of fact. While it is true that the Board has never expressly ruled on the petition, we consider the Board's approval of the application final. First, there is no statutory requirement that a rehearing be held before the final decision. Second, the petition did not state any new facts which would be presented at the hearing but merely asked that a hearing be held at which the Board would make specific rulings on the proposed findings. The Board is not required

to make specific rulings except in its final decision. § 5-710 (b). Third, even though the Board apparently has the authority to grant a rehearing before the final decision, Bank Department Rule 32, the decision to do so lies within its discretion. 2 Am. Jur. 2d Administrative Law § 539. We cannot say that the Board's failure to rule on the petition, or to hold a rehearing, was an abuse of discretion.

Appellant next asserts that the approval of the charter was arbitrary, capricious, and an abuse of discretion because there was no substantial evidence to support the findings that the capital structure and future earnings prospects of appellee applicant are adequate. Appellant argues that appellee failed to comply with the Arkansas Securities Act, Ark. Stat. Ann. § 67-1241 (Repl. 1966), in the sale of its stock and this noncompliance exposes the appellee bank to potential ruinous liabilities to its stockholders. Appellee responds that the sale of the shares was properly exempted under the Act. We hold that the appellant lacks standing to complain about this matter as ''the only persons who might be hurt would be the subscribers to the stock.'' *Bank of Glenwood* v. *Arkansas State Banking Board*, 260 Ark. 677, 543 S.W. 2d 761 (1976).

Appellant's sixth contention is two-fold: (1) The Board and the Commissioner did not find that the stockholders of appellee applicant had the confidence of the community as required by Ark. Stat. Ann. § 67-303.1 (Supp. 1979), and (2) there is no substantial evidence to support such a finding. No Arkansas cases are cited, and we find none interpreting this statute in reference to the exactness of the finding required. We are satisfied, however, that the Board's finding was sufficient by stating ''a majority of the stockholders are . . . such as to command the confidence of the community.'' As to substantial evidence, we first observe that at the hearing the appellant's counsel advised the Board that there would be no argument about the character of the people who were asking for the bank charter. Even so, according to appellee's application, supporting data and the Bank Examiner's Investigation Report,[1] the majority stockholders are success-

---

[1] We granted appellee's motion to make this report part of the record. We now consider it upon reaching the merits of the case.

ful individuals in business, professional and other endeavors and are financially sound. They have good characters and reputations. Two are locally elected public officials. The incorporators, who jointly own 52% of the stock, will serve as the bank's directors and have the primary responsibility of the management of the bank. Community confidence in another of the major stockholders can be inferred from the fact that several Waldron residents sought financing from him through another bank in an adjoining county when they were unable to obtain financing from the appellant bank. In the circumstances we cannot say that there is no substantial evidence to support this finding.

Appellant's seventh contention is also two-fold: (1) the Board and the Commissioner did not find that appellee applicant's stockholders are financially able to discharge their financial obligations as required by §§ 67-303.1 and 67-303.2, and (2) there is no substantial evidence to support such a finding. The thrust of the two-fold argument is that the Board made no finding inasmuch as it and the Commissioner improperly conditioned approval of the charter upon appellee applicant's obtaining FDIC insurance.

We do not agree with appellant that conditioning of the charter approval is in excess of the power of the Board and the Commissioner. § 67-205, in effect, permits the conditioning of charter approval by stating that "if the board shall recommend that conditions designated by it shall be met before the grant of such [an] application, the Bank Commissioner shall grant the application only after the conditions mentioned in such recommendation have been complied with . . . ." Certainly a requirement that the applicant secure FDIC insurance is in harmony with the Board's statutory duty "to attain and maintain the maximum degree of protection for depositers." See Ark. Stat. Ann. § 67-204 (Repl. 1966); and 2 Am. Jur. 2d Administrative Law §§ 300-304.

Appellant asserts last that there is no substantial evidence to support the finding that there "exists a public necessity of the business of the community" of Waldron for another bank as required by § 67-303.1. Contrary to this

contention, there is evidence that Waldron is in an area of the state which is expected to experience substantial growth and development within the next five years. A study indicated that employment in that region will increase by an average of 24%; i.e., 27.7% increase in employment in goods-producing industries and a 20% increase in service industries. Also an increased need is predicted for workers in the region in almost all major occupational groups. Wholesale and retail sales in Scott County have increased significantly in the last five years, indicating a stable economic growth. New residential construction is increasing. There is evidence of a $4 million industrial expansion of a local manufacturer, providing substantial benefits for related service industries. Several firms are planning or beginning coal mining operation in the county. Evidence was adduced that residents of the community were using banks outside the county to meet their banking needs. We hold, although the evidence is in conflict, there is substantial evidence in the record as a whole to support the Board's finding of a public necessity in the community for the proposed bank. See *Arkansas Racing Commission,* supra; and *Arkansas S&L Board* v. *Central Arkansas S&L,* 260 Ark. 59, 538 S.W. 2d 505 (1976).

Affirmed.

HARRIS, C.J., not participating.

FOGLEMAN, J., concurs.

JOHN A. FOGLEMAN, Justice, concurring. I concur in the result but I strongly feel that the procedures followed by the Arkansas State Banking Board were subversive of the intent and purposes of the Arkansas Administrative Procedure Act and thereby hamper judicial review.