FIRST FEDERAL SAVINGS & LOAN
ASSOCIATION of El Dorado, Arkansas *v.*
UNION FIDELITY SAVINGS & LOAN
ASSOCIATION and ARKANSAS SAVINGS
& LOAN ASSOCIATION BOARD

74-109                                    515 S.W. 2d 75

Opinion delivered November 4, 1974

*J. S. Brooks, Edwin B. Alderson* and *Wright, Lindsey & Jennings,* for appellant.

*Brown, Compton & Prewett* and *Smith, Williams, Friday, Eldredge & Clark,* by: *William L. Terry* and *Hermann Ivester,* for appellees.

FRANK HOLT, Justice. The appellee, Arkansas Savings and Loan Association Board (hereinafter referred to as Board), issued to appellee, Union Fidelity Savings and Loan Association (hereinafter referred to as appellee), a charter to do business in El Dorado. The application was opposed by the appellant. The Board's decision was affirmed by the circuit court and from that judgment comes this appeal. For reversal the appellant asserts that the court erred in finding there was substantial evidence to support the Board's decision to issue the charter. Appellant argues that the proof is insubstantial to show there is a public need for a new association; the volume of business in the area does not indicate a successful operation by appellee; and there is no substantial evidence that appellee's doing business in the area will not unduly harm any other existing association or other financial institution in that area. Ark. Stat. Ann. § 67-1824 (Supp. 1973). Since these issues are so closely related, we discuss them together.

The appellant recognizes our rule that in this type case we affirm the Board's action if there is any substantial evidence to support its findings. *Morrilton Fed. S&L* v. *Arkansas Valley S&L,* 243 Ark. 627, 420 S.W. 2d 923 (1967). Furthermore, in determining if substantial evidence exists, we consider only the appellee's testimony or that evidence adduced which is most favorable to the appellee. *Baldwin* v. *Wingfield,* 191 Ark. 129, 85 S.W. 2d 689 (1935); and *Washington Natl. Ins.* v. *Meeks,* 252 Ark. 1178, 482 S.W. 2d 618 (1972). In the case at bar, when we consider the evidence with all reasonable inferences deducible therefrom in the light most favorable to the appellees, as we do on appeal, we are firmly of the view there is substantial evidence to support the Board's findings.

The appellant, chartered in 1934, is the only savings and loan institution in El Dorado and Union County. Appellant is a 34 million dollar institution and is twelfth in size in the state. However, El Dorado is the ninth largest city in the state and the largest city with only one savings and loan association (with the exception of North Little Rock which is also served by several associations in Little Rock.) There are eight smaller cities in Arkansas with two existing savings and loan

associations (six of these eight smaller cities are less than one-half the size of El Dorado and two of these eight smaller cities are less than one-third the size of El Dorado). The Board, being knowledgeable of the existence and success of these associations in smaller areas, no doubt took into consideration whether an additional savings and loan association was needed, could be successful in El Dorado and would not unduly harm the only one existing there.

The fact there was a population decline in the county by 1.9% the past three years is only one factor for the Board's consideration. However, during the period 1960-1971 there was a 73.5% increase in personal income in Union County. There was evidence by appellee's economic expert witness, as abstracted, that "the increase in employment which appears to have occurred in Union County is a very recent phenomonon in the last eighteen months. Now, I think there are pretty strong indications of continued employment in the availability of new jobs in Union County. I think there will be a significant growth in employment over the next two or three years."

An executive of the El Dorado Chamber of Commerce detailed numerous industrial and commercial projects then under construction at a total cost of approximately 36 million dollars, which would create considerable additional employment. Appellee's expert economic witness was of the view that these new construction projects underway "means there seems to be a trend now toward greater industrialization of the area, a trend toward population growth and I think it is verifiable." There was evidence that appellant does not make loans on mobile homes, nor construction or interim loans on speculative building of houses. Local banks, which do not oppose appellees' charter, are making mortgage loans which characteristically is done by savings and loan associations and not by the banks. One executive of a bank in the county testified that "I don't think it [the new association]would have any effect on it [the bank]. In fact I think maybe it would help us." This view was on the basis that it was found necessary to make long term loans to their customers which they prefer not to do. One of appellant's witnesses admitted that during the current year, 1973, (the hearing was conducted on November 28, 1973) it had not made any commer-

cial loans in the county. It appears that a large shopping center mall, approximating a cost of 3 1/2 million dollars had recently opened and that financing was principally provided by a savings and loan association in Pine Bluff. On another occasion, appellant was approached to finance the purchase of a local office building and the local purchaser found it necessary to secure the loan from a savings and loan in Magnolia. Savings and loan associations in Camden and Pine Bluff have considered applying for branch charters in El Dorado.

There was evidence by appellee that appellant's advertising budget was very small. A witness for appellant admitted that it has "never done too much advertising." Another witness for appellant testified that the public "seems to have more confidence in the bank than they do in a savings and loan, more careful about keeping their account insured." Three of appellant's other witnesses admitted that the local economy was "good," "very good" and "definitely on the upswing." A building contractor with long experience in the county was very optimistic as to the growth of El Dorado and the county. This builder has consistently built new homes requiring speculative financing. From January, 1973, up to the date of the hearing (November 28, 1973), he listed interim financing by local institutions at $135,000 and out-of-town financial institutions at $330,000. As to permanent financing, local financial institutions provided him with $110,600 and out-of-town financial institutions provided $557,000. He had requested financing from each of the four local institutions. The demand for construction money and financing is greater now than it has been in the last twenty years. Retail sales in the county have increased 203% since 1960.

As previously stated we are firmly of the view, without detailing further evidence from the voluminous record, there is substantial evidence, when viewed most favorably to appellee, as we must do on appeal, to support the Board's finding that there is presently a need, which indicates a successful operation, for another savings and loan association in El Dorado and Union County and that it will not unduly harm the appellant, the only protestant, or other existing financial institutions in that area.

Neither do we agree with appellant's contention that the evidence is insubstantial to support the Board's findings that appellee will be "independent of the other financial institutions, that those persons named in the Articles of Incorporation as directors and officers do not have such affiliations with any financial institutions, or other businesses closely related to the savings and loan association's business, which would affect the independence of the proposed association, and the directors are representative of the community." Appellant invokes Ark. Stat. Ann. § 67-1824 (Supp. 1973), which in pertinent part provides that the Board find:

The proposed association will be independent of other financial institutions, that those persons named in the articles of incorporation as directors and officers do not have such affiliations with any financial institutions or other businesses closely related to the savings and loan association business which would affect the independence of the proposed association, and that the directors are representative of the community.

It appears that the father of one of appellee's directors is a director of a local bank. The fathers of two of appellee's directors are directors of another local bank and one of appellee's directors is also a director of a local bank. However, four of the nine directors have no ties with any bank and one unnamed director, the managing officer, will have no ties to any local bank. Appellee's capitalization consisted of $560,000, $400,000 in permanent capital and $160,000 by appellee's stockholders. This is 2 1/2 times the minimum amount ($180,000 in permanent capital and $60,000 in paid-in surplus). The appellant does not take issue with the Board's finding that:

The character, responsibility and general fitness of the persons named in the articles of incorporation and who will serve as directors and officers of the Association are such as to command confidence and warrant belief that the business of the proposed association will be honestly and efficiently conducted . . . . .

Suffice it to say that all of the directors have differing backgrounds and have attained successful careers in their

respective professions. They are representative of the community. Certainly, the Board was justified in finding that these individuals, successful in their own right, would be independent and conscientious in their new responsibility in preserving their own interest as well as the paramount interest of the public.

Appellant, in oral argument, vigorously insists that we should reverse and remand this cause to the Board for a definitive finding as to the basis of its decision as is required by the Administrative Procedure Act. *Ark. S&L Bd.* v. *Central Ark. S&L.,* 256 Ark. 846, 510 S.W. 2d 872 (1974). Appellee insists that we should affirm the case on its merits as we did in *Ark. S&L Bd.* v. *Grant Cty. S&L,* 256 Ark. 858, 510 S.W.2d 863 (1974). Both of these decisions were handed down the same day and after appellant's reply brief was filed. We remanded in *Ark. S&L Bd.* v. *Central Ark. S&L, supra.* There the issue that the Board erred in failing to make specific findings of underlying facts as required by law was argued in the briefs although not in the trial court. We said that the specific findings by the Board were for the benefit of the reviewing courts. In *Ark. S&L Bd.* v. *Grant Cty. S&L, supra,* the issue was not presented and we affirmed. Of course, as we have said, specific findings of the underlying facts are of great benefit upon appeal. However, here, as in *Ark. S&L Bd.* v. *Central Ark. S&L, supra,* the issue was not raised in the briefs. Only at oral argument was appellant's contention asserted. By that time the court had studied the briefs and the issues there presented. Having done so and since the evidence is amply substantial to support the Board's findings, we find it unnecessary to remand the cause for the Board to detail the basis of its findings.

We need not consider what action we would have taken had not both the Board and the circuit court decided this case before our decision in *Ark. S&L Bd.* v. *Central Ark. S&L, supra.*

Affirmed.