WHITE COUNTY GUARANTY SAVINGS
AND LOAN ASSOCIATION and
ARKANSAS SAVINGS & LOAN ASSOCIATION
BOARD *v.* FARMERS AND MERCHANTS
BANK OF DES ARC, Arkansas

77-203                                    562 S.W. 2d 582

Opinion delivered February 27, 1978
(In Banc)
[Rehearing denied April 3, 1978.]

894

*Charles D. Matthews,* of: *Matthews, Mays & Glaze; Robert Edwards;* and *Roger W. Giles,* for appellants.

*James M. McHaney* and *John C. Calhoun, Jr.,* of: *Owens, McHaney & McHaney,* for appellee.

GEORGE HOWARD, JR., Justice. The question for review is whether the decision of the Arkansas Savings & Loan Association Board, hereinafter referred to as the Board, in approving the application of the White County Guaranty Savings and Loan Association, appellant herein, and hereinafter referred to as the Guaranty, for a branch office at Des Arc, Prairie County, is supported by substantial evidence on the record considered as a whole. Stated differently, we must determine if the Circuit Court of Prairie County, Northern District, committed reversible error in holding that the Board's decision was not supported by substantial evidence and, accordingly, reversed and dismissed the Board's action.

## THE FACTS

Appellant, the Guaranty, filed an application with the Board to establish a branch office at Des Arc, Arkansas. Appellee, Farmers and Merchants Bank of Des Arc, Arkansas, hereinafter referred to as the Bank, resisted the application vigorously.

Following a hearing conducted by the Board on May 11, 1976, the Board unanimously approved the application and entered the following order, in material part, on May 12, 1976:

"1. There is a public need for the proposed branch; and,

2. The volume of business in the area in which the proposed branch will conduct its business is such as to indicate a successful operation; and,

3. The operation of the proposed branch office will not unduly harm any of the existing associations or other financial institutions; and,

4. The operation of the proposed branch office will not unduly harm the association seeking authority to open the branch."

In support of the above findings, the Board also set out extensive underlying facts in its order.

Appellee, on May 18, 1976, appealed the Board's decision to the Circuit Court of Prairie County contending essentially that there was no substantial evidence to support the Board's findings and conclusions.

## HOLDING OF THE TRIAL COURT

On April 7, 1977, the Circuit Court reversed the decision of the Board holding, in relevant part, as follows:

1. ". . . the court finds that the decision of the Board is not supported by substantial evidence of public need

or prospects for successful operations or the absence of undue harm to existing financial institutions in the area."

2. "Specifically, the Court finds that the Proposed Service Area (PSA) of the Applicant-Intervenor, White County Guaranty Savings & Loan Association was substantially overstated in area and population and that the resulting projections of savings volume, loan volume and profit submitted by it were thereby rendered inaccurate, unreliable, overstated, and misleading; that there is a substantial overlap of the area presently served by the facilities or applicant-intervenor at Searcy and Bald Knob with that claimed in its PSA; that the residential construction loan volume projected by applicant-intervenor is unrealistic in view of the small actual volume of such construction in this area; that the realistic trade area to be served by applicant-intervenor is adequately served by existing financial institutions; that the *evidence submitted in support of the application was not substantial and reliable, particularly in view of the record as a whole;* that all other issues of law and fact are found in favor of Petitioner, and that the Order of the Board is not supported by substantial evidence and should be reversed and set aside." (Emphasis added)

## THE DECISION

It is, perhaps, appropriate to deal first with the applicable law that is to be resorted to by the circuit court in reviewing the decision of the Board in determining, (1) the area of responsibility of the circuit court, and (2) the proper standard of judicial review.

In Ark. Stat. Ann. § 67-1866 (Supp. 1977), it is provided as follows:

"The Board shall not approve any application for authority to open a branch office or other service facility for business unless the association seeking said authority establishes and the Board shall have affirmatively found from the data furnished with the application, the evidence adduced at such hearing . . . that:

"(1) There is a public need for the proposed branch office or service facility and the volume of business in the area in which the proposed branch office or service facility will conduct its business is such as to indicate a successful operation.

"(2) The operation of the proposed branch office or service facility will not unduly harm any other existing association or federal savings and loan association or other financial institution.

"(3) The operation of the proposed branch office or service facility will not unduly harm the association seeking authority to open the branch office or service facility for business."

Ark. Stat. Ann. § 5-713, which is Arkansas's Administrative Procedure Act, in providing for judicial review of an administrative agency's decision, provides in material part as follows:

" . . .

"(h) The court may affirm the decision of the agency or remand the case for further proceedings. It may reverse or modify the decision if the substantial rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
(1) in violation of constitutional or statutory provisions;
(2) in excess of the agency's statutory authority;
(3) made upon unlawful procedure;
(4) affected by other error of law;
(5) not supported by substantial evidence of record; or
(6) arbitrary, capricious, or characterized by abuse of discretion."

In *Arkansas Savings & Loan Association Board and Security Savings & Loan Association* v. *Central Arkansas Savings & Loan Association,* 260 Ark. 58, 538 S.W. 2d 505, we adopted the rationale enunciated by the United States Supreme Court in *Universal*

*Camera Corp.* v. *National L. R. Bd.*, 340 U.S. 474, 71 S. Ct. 456 (1950), that court review of an administrative decision, under the federal Administration Procedure Act, requires such a review upon the record as a whole in applying the substantial evidence rule rather than predicating such review upon only the evidence supporting the administrative finding when reviewed by itself. In other words, we held that the provisions of Arkansas's Administrative Procedure Act give to the courts the same type of review that is applied by the federal courts.

In *Universal Camera Corp.* v. *National L. R. Bd.*, supra, the Court made the following observation in discussing the well recognized limitations that a court faces in determining substantiality by considering the record as a whole:

> "To be sure, the requirement for convassing 'the whole record' in order to ascertain substantiality does not furnish a calculus of value by which a reviewing court can assess the evidence. *Nor was it intended to negative the function of the Labor Board as one of those agencies presumably equipped or informed by experience to deal with a specialized field of knowledge, whose findings within that field carry the authority of an expertness which courts do not possess and therefore must respect. Nor does it mean that even as to matters not requiring expertise a court may displace the Board's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo.* Congress has merely made it clear that a reviewing court is not barred from setting aside a Board decision when it cannot conscientiously find that the evidence supporting that decision is substantial, when viewed in the light that the record in its entirety furnishes, including the body of evidence opposed to the Board's view.
>
> . . .
>
> ". . . Nothing in the statutes suggests that the Labor Board should not be influenced by the examiner's opportunity to observe the witnesses he hears and sees and the Board does not. Nothing suggests that reviewing courts should not give to the examiner's report such

probative force as it intrinsically commands.''
(Emphasis added)

In *First National Bank of Fayetteville* v. *Smith,* 508 F. 2d 1371 (8th Cir. 1974), the Court, in reviewing an administrative decision made the following pertinent comments:

> "The 'arbitrary and capricious' standard of review is a narrow one . . . its scope is more restrictive than the 'substantial evidence' test which is applied when reviewing formal findings made on a hearing record . . . 'Administrative action may be regarded as arbitrary and capricious only where it is not supportable on any rational basis' . . . *Something more than mere error is necessary to meet the test* . . . To have administrative action set aside as arbitrary and capricious, the party challenging the action must prove that it was 'willful and unreasoning action', without consideration and with a disregard of the facts or circumstances of the case . . . ''
> (Emphasis added)

Upon reviewing the entire record carefully, we are persuaded that the appellee failed to meet the burden imposed upon it to show that the Board's findings were not supported by substantial evidence, and while much of the evidence in this record did not favor the establishment of a branch as requested by appellant, the decision of the Board was, indeed, not without some support in the record. Consequently, we hold that the trial court committed reversible error in holding that the Board's decision was not supported by substantial evidence and by substituting its judgment in lieu of the Board's judgment in finding "that the evidence submitted in support of the application was not . . . reliable . . . " Indeed, it is clear that the credibility of witnesses and the proper weight to be accorded evidence adduced is a prerogative of the Board and not that of the reviewing court. It must be remembered that the Board was in a position to observe the witnesses and consider their demeanor and conduct. The reviewing court does not have this advantage in view of the fact that administrative decisions are not reviewed *de novo.*

In *Terrell Gordon* v. *Gordon L. Cummings et al,* 262 Ark.

737, 561 S.W. 2d 285 (1978), involving an administrative proceeding, we made this observation:

"It is well settled that administrative agencies are better equipped than courts, by specialization, insight through experience and more flexible procedures to determine and analyze underlying legal issues; and this may be especially true where such issues may be wrought up in a contest between opposing forces in a highly charged atmosphere. This recognition has been asserted, as perhaps, the principal basis for the limited scope of judicial review of administrative action and the refusal of the court to substitute its judgment and discretion for that of the administrative agency."

It would unduly prolong this opinion to enumerate in detail the evidence that substantially supports the Board's decision and, therefore, we shall mention briefly the evidence we find to be clearly substantial.

The proposed service area (PSA) branch is not presently served by a savings and loan association; the PSA consists of White, Woodruff, Monroe and Prairie Counties having a stable and nondeclining population and according to the 1970 census report, the population exceeds 13,000 inhabitants.

From 1965 through 1974, Prairie and White Counties had a per capita income higher than the State average. Moreover, the evidence indicates that Prairie County income is the highest in the State.

The evidence also reflects that retail trade increased in Prairie County from $12.7 million to $15.9 million between 1967 and 1972 while in White County the increase in retail trade increased from $48.1 million to $76.3 million.

The personal income of Prairie County residents increased from $28.5 million in 1969 to $79.3 million in 1974 at an annual rate of 35.6% and, after inflation, equaled 21.5%. However, during this same period, the annual rate of increase for Arkansas in total personal income was only 5.8%. White County's total personal income increased from $90.3 million

to $161.1 million between 1969 and 1973 at an annual rate of 15.8% and, after inflation, at a rate of 6.7%. Woodruff County experienced a growth from $32.2 million to $65.3 million in total personal income for an annual rate of 23.2% and, after inflation, equaled 12.3%.

The evidence also established that the financial institutions in the PSA have realized considerable growth. Three banks are located in the proposed area and the total assets of the banks combined grew from $9,978,000 in 1969 to $25,470,000 or 157.3% in 1975. Time deposits grew from $3,-831,000 to $23,181,000 with a total increasement of $8,350,-000 or 218% during this period.

Appellant's economic experts established that the three banks in the PSA have been able to accumulate only 35% of the total new savings generated by the economic growth between 1970 and 1975, while 65% of the available savings deposits were placed outside of the PSA.

Appellant's economic experts also projected in 1976 total estimated savings flow to be $6.1 million and the estimated share of the three banks in the PSA would be $2.1 million. The evidence further reflects that appellant's branch could reach its goal of $1,000,000 in savings deposits during the first year from the remaining $4,000,000 not deposited with the three banks.

Finally, the economic experts for appellant projected that at the end of the first three years of operation of the branch, its assets would be $1,000,000, $2,100,000 and $3,-300,000, respectively. Based on these and other projections, the profits of the branch at the end of the first year would be $490.00, at the end of the second year $17,751, and at the end of the third year $28,944. Based on this testimony the Board concluded that the operation of the branch would not unduly harm the appellant.

Reversed and remanded for proceedings not inconsistent with this opinion.

Byrd and Hickman, JJ., not participating.

FOGLEMAN, J., dissents.

JOHN A. FOGLEMAN, Justice, dissenting. The troublesome problem of judicial review, both at the trial and appellate levels, now seems further from solution than ever. Nowhere does the process seem to rest on shifting sands more than in the type of case now before us, i.e., action on applications for the establishment of savings and loan associations or branch offices of established associations. When one views our decisions in these cases, it becomes obvious that a trial judge can only approach a case like this with uncertainty, and perhaps bewilderment, as to just which standard he should follow. See, e.g., *Arkansas Savings & Loan Board* v. *Central Arkansas Savings & Loan Ass'n.*, 260 Ark. 58, 538 S.W. 2d 505; *First Federal Savings & Loan Ass'n.* v. *Union Fidelity Savings & Loan Assn'.*, 257 Ark. 199, 515 S.W. 2d 75; *Arkansas Savings & Loan Board* v. *Southerland*, 256 Ark. 445, 508 S.W. 2d 326; *Arkansas Savings & Loan Board* v. *Grant County Savings & Loan Ass'n.*, 256 Ark. 858, 510 S.W. 2d 863; *Arkansas Savings & Loan Board* v. *Corning Savings & Loan Ass'n.*, 253 Ark. 987, 490 S.W. 2d 460; *Morrilton Federal Savings & Loan Ass'n.* v. *Arkansas Valley Savings & Loan Ass'n.*, 243 Ark. 627, 420 S.W. 2d 923.

In *Arkansas Savings & Loan Board* v. *Central Arkansas Savings & Loan Ass'n.*, supra, a clear majority of the court (all but the writer) cast aside everything we had previously said on the subject and rejected the idea that, in determining the substantiality of evidence, we should be governed by the same rule of review as we follow in cases involving jury verdicts. In doing so, it adopted language from *Universal Camera Corp.* v. *National L. R. Bd.*, 340 U.S. 474, 71 S. Ct. 456, 95 L. Ed. 456 (1950), ignoring all our previous statements and decisions on the question, but relating the quoted language to our Administrative Procedure Act [Ark. Stat. Ann. § 5-701 et seq (Repl. 1976)] and particularly to one section (Ark. Stat. Ann. § 5-713). The language adopted was:

"Whether or not it was ever permissible for courts to determine the substantiality of evidence supporting a Labor Board decision merely on the basis of evidence which in and of itself justified it, without taking into account contradictory evidence or evidence from which

conflicting inferences could be drawn, the new legislation definitely precludes such a theory of review and bars its practice. The substantiality of evidence must take into account whatever in the record fairly detracts from its weight . . . . "

The majority opinion there specifically stated that the court was construing our act to mandate that type of judicial review. Yet the very first time a trial court follows that mandate, the court retreats from that position.

The portion of the circuit court judgment italicized by the majority clearly shows that the review was undertaken in the light of what was then our most recent decision. The court stated that its findings were reached on the review provided for in that case. The quoted portion of the circuit court's findings are completely ignored by the majority. Every factual statement in the majority opinion to show substantial evidentiary support for the board's action is based upon the applicant's stated PSA (Proposed Service Area). I submit that whatever gauge is used in testing substantial evidence, the basis for this PSA was totally destroyed by the evidence, and that every estimate, projection or finding stated in the majority opinion and in the board's findings of fact fell when its foundation, the PSA, failed. In this the trial court was eminently correct.

The proposed service area consisted of the north half of Prairie County and portions of White, Woodruff and Monroe Counties, with a total population of 13,057. It was described in the application as a 25-mile area which would normally be considered commuting distance. It was determined solely by J. Darol Bell, White County Guaranty's manager, who explained how he arrived at it by saying that he based it on his association's experience in Bald Knob. The application recognized that savings and loan associations had branch offices outside the PSA in Brinkley, Bald Knob and Beebe, all of which are closer to most of the area than Searcy, the home office of White County Guaranty Savings & Loan Association, which also has the branch office at Bald Knob, with a service area population of 9,143. Most of the applicant's projections on the estimated income, operating expenses, deposits and loans of the proposed Des Arc branch were bas-

ed upon the performance of the Bald Knob branch. All were based on this PSA.

The population of Des Arc was 1,714 in 1970.[1] It is 31 miles from Searcy by highway, 25 miles from Brinkely, 42 miles from Stuttgart, 34 miles from Lonoke, 18 miles from Hazen, 22 miles from DeValls Bluff and 26 miles from Carlisle. Brinkley lies virtually on the perimeter of the PSA and much of the area is much nearer to Brinkley than Des Arc. Almost the same situation prevails as to Bald Knob. Some of the PSA is actually nearer Stuttgart than Des Arc. Carlisle is served by a mobile unit of a Little Rock association twice weekly. A considerable portion of the PSA is nearer Carlisle than Des Arc. DeValls Bluff is as close to Stuttgart, where there is an established association, and to Brinkley, where there is a branch office of White County Guaranty, as it is to Des Arc. Most of the White County area in the PSA is closer to Searcy than it is to Des Arc. A portion of the PSA in the Northern District of Prairie County is closer to Beebe than it is to Des Arc.

The applicant explained that its PSA boundaries were established by considering the factors of convenience and needs of potential customers within the proposed service area. It would include both Hazen and De Valls Bluff in the Southern District of Prairie County. The evidence that these towns and their surrounding area were not in the Des Arc trade area was overwhelming.

Dr. Donald R. Market, an economist employed to make an economic report for the applicant,[2] said that he took the PSA as determined by the management of the applicant and analyzed the data. He said that he did not attempt to justify the PSA. After testimony which clearly showed that it was overextended, Dr. Taylor stated that he thought the applicant was a little "exuberant" in defining its service area. He did say that he thought it was "somewhat bigger" than that stated by Dr. Dominick, an economist employed by the

---

[1]The population was estimated to be 2,200 at the time of the application.

[2]Dr. Phillip Taylor, Jr. worked in conjunction with Dr. Market in making this study.

protestant. He did not attempt to describe or justify this "somewhat bigger" area. He said that the PSA or market area described by Dr. Dominick had a population of 5,205. The only figures or estimates he really adjusted for this area were his estimate of per capita income, and those dependent on this estimate.

Dr. Dominick, Professor of Finance and holder of the Chair of Banking at the University of Arkansas, had made an independent study of the service area to determine the market area of a financial institution located in Des Arc. He demonstrated that the travel distance from a considerable portion of the proposed White County area would be nearly twice as great to Des Arc as to Searcy. When it was equal or virtually so, he pointed out that at least one-half of the people would go to Searcy, a city of 10,000 population, rather than to Des Arc. He also pointed out that Beebe was a larger town than Des Arc, and as close or closer to a substantial portion of applicant's PSA than Des Arc. He also pointed out the attractiveness of travel on Interstate Highway 40, passing south of Des Arc and through or near Brinkley, Hazen and Carlisle, dividing Prairie County.

Dr. Dominick referred to the testimony of an implement dealer, who was the only witness whose testimony even tended to justify the applicant's PSA.[3] This witness, a John Deere dealer, had testified that individuals from Stuttgart and from beyond both Searcy and Carlisle came to buy his product and that the implement company's service area reached from Beebe to Carlisle to Lonoke, as far as Stuttgart and beyond Cotton Plant and Hunter. The probative value of this testimony had been virtually, if not totally, negated by the reason this witness gave for those distant customers. He said they came "because we offer them something they can't get at a closer location." Nothing in this record even suggests that White County Guaranty Savings & Loan Association will offer people outside the area, as limited by Dr. Dominick, anything they can't get at a closer location. But Dr. Dominick pointed out that one purchasing a $30,000 tractor, or seeking the services of a good attorney or good dentist or medical doc-

---

[3]The manager of a factory in Des Arc testified that their employees were drawn from distances of "about 15 miles."

tor or for special shopping, might drive from De Valls Bluff to Searcy, Des Arc, Brinkley or Stuttgart but would not drive that far to do business with a financial institution, unless he hated everyone in his market area. He said that the major consideration in consumer selection of a financial institution is convenience. There is no substantial contradiction of this testimony by Dr. Dominick. The board simply stated that the PSA consisted of that described in the application. It really made no finding of fact on this critical point, satisfying itself by saying that applicant's economic experts, using the protestant's adjusted PSA, projected personal income to grow from $39.6 million in 1975 to $56.8 million in 1980, with a savings flow during the same period growing from $2.4 million to $3.4 million. The board added that per capita income for this adjusted area would be $7,608 as opposed to a national average of $5,832.

I repeat that the circuit court was eminently correct in the finding quoted in the majority opinion and submit that the circuit judge was not substituting his judgment for the expertise of the board. I further submit that the majority has failed to demonstrate that the circuit judge erred.