John W. CAIN, D.P.M. *v.* ARKANSAS STATE
PODIATRY EXAMINING BOARD

81-186                                         628 S.W. 2d 295

Supreme Court of Arkansas
Opinion delivered February 8, 1982
[Rehearing denied March 15, 1982.]

*Gary K. Hoffman* of *Brown and Fox, P.C.*, Kansas City, Mo., and *Robert L. Robinson, Jr.* of *House, Holmes & Jewell, P.A.*, of Counsel to *Brown and Fox*, for appellant.

*Steve Clark,* Atty. Gen., by: *Robert R. Ross,* Deputy Atty. Gen., for appellee.

DARRELL HICKMAN, Justice. The Arkansas State Podiatry Board revoked the license of John W. Cain, a podiatrist, to practice in this state. He appealed that decision to the Circuit Court of Pulaski County and the court found substantial evidence to support the Board's findings and affirmed its decision. Cain raises six arguments for reversal on appeal, five of which relate to questions of law. The sixth challenges the sufficiency of the evidence before the Board. None of the five questions of law were presented to the circuit court and the circuit court did not rule on them. Therefore, we may not consider them on appeal.

Dr. Cain is a resident of Bella Vista and has offices in Bentonville, Arkansas and Joplin, Missouri. He is licensed to practice podiatry in four states. Several complaints against him were filed with the State Podiatry Board and in 1979 the Board notified Dr. Cain that a hearing would be held on his treatment of four patients. The Board met on three separate occasions and heard testimony in this matter. Two of Dr. Cain's patients testified, Mr. Ernest Staudt and Charles Tosch. Dr. Daniel Taylor, a podiatrist who formerly practiced in Newport, Arkansas, and Dr. Carl Kendrick, an orthopedic surgeon, testified for the state. Marsha Clay-

brook, an employee of Blue Cross-Blue Shield, testified regarding claims submitted by Dr. Cain. Four expert witnesses, all podiatrists, testified on behalf of Dr. Cain. The Board requested, and counsel for Dr. Cain stipulated, that the records of twelve patients would be submitted to the Board for their study and consideration. Dr. Cain has been represented by three different attorneys in this matter. At his first two hearings he was represented by Mr. William R. Wilson of Little Rock. At his third hearing and on his appeal to the circuit court he was represented by Mr. Bob Scott of Little Rock. On this appeal he is represented by a firm from Kansas City, Missouri.

At the conclusion of the Board hearings, it found that Dr. Cain committed malpractice and failed to comply with a sufficient standard of care in the treatment of Mr. Ernest Staudt. The Board further found that Dr. Cain failed to maintain proper records of procedure and medication for his patients in violation of the rules and regulations of the board and Arkansas law.

Mr. Ernest Staudt of Rogers, Arkansas, an employee of Union Carbide, testified that he first went to Dr. Cain with a problem regarding his foot. He said that Dr. Cain told him his big toe needed straightening, that it would be a simple matter, and that he should be back to work in about three days. Staudt stated that he made arrangements so that he would not miss any work. He said before the operation he was asked to sign a consent form which was blank. He testified that he did not know his toe would be operated on until he was in Dr. Cain's office and he realized that the doctor was using a kind of drill on his toe. He went back to Dr. Cain twice a week for over four months and said that he regularly complained of pain and discomfort. He said that each time the doctor would simply remove a bandage which would be bloody and replace it with a clean one. After Staudt's complaints of pain the doctor prescribed some medication for him. In October of 1979, Staudt consulted another doctor and was referred to Dr. Taylor, a podiatrist in Newport. Dr. Taylor advised him that the operation he had was not successful and he had two choices. Staudt chose the treatment that would require a bone graft and it was

performed by Dr. Taylor. Some post-operative work was done by Dr. Kendrick of Fayetteville since he was nearby and more available to Mr. Staudt who lived in nearby Rogers.

Dr. Cain conceded in his testimony that he did not note in Staudt's medical records that he had prescribed the drug Dolene, which is a "sister" to Darvon. He also conceded that he did not prepare an operative report on the operation. In fact, the record on Mr. Staudt simply shows the days over several months that he visited Dr. Cain. Dr. Cain denied that the consent form was signed in blank and said his nurse had filled in the form. He conceded that he had told Mr. Staudt that he would "straighten" the big toe but said he went into detail with him about the operation. He denied that the toe was bloody each time Staudt came back but conceded that Staudt complained of pain and that he prescribed the Dolene for the pain. Dr. Cain and his counsel both conceded that the records in Staudt's case were not adequate.

Dr. Taylor, a podiatrist, who at the time of the hearings was practicing at the Veteran's Hospital in Milwaukee, Wisconsin, testified that Dr. Cain used the wrong procedure, that the second toe instead of the great toe should have been treated. Dr. Kendrick, although an orthopedic surgeon, was not qualified as an expert witness in podiatry; but he was allowed to testify that the procedures used by Dr. Cain were not satisfactory. Dr. Kendrick said that he and the president of the county medical society visited Dr. Cain about complaints that had been made about his operations and procedures.

Miss Marsha Claybrook, an employee of Blue Cross-Blue Shield, testified that because of Dr. Cain's numerous claims it was decided that all of his claims to Blue Cross-Blue Shield would be placed on a "one hundred percent review". That is, everything that was sent in in Dr. Cain's name was to be reviewed by a doctor before he was paid. The reason given was that his procedures exceeded the normal in several categories. For example, in one quarter his claims for x-rays of the foot were 200% above the normal for x-rays by a podiatrist. On his osteectomies his percentage was 1,400% above normal. In urinalysis during one quarter he was

2,751% above normal. She said, however, that there had been no evidence of any fraud in his claims.

Of the twelve patients' records which Dr. Cain submitted to the Board, the Board found that ten of those records did not contain *any* record of the treatment of the patient but only records of insurance claims. This was not disputed.

Dr. Cain called four witnesses who were podiatrists and they all testified that Dr. Cain used proper procedures and was not guilty of any malpractice in the treatment of Staudt. Dr. Don S. Pritt, one of those witnesses, testified that he had been in practice for twenty-five years and had known Dr. Cain for many of those years. He said that Dr. Cain had an excellent reputation as a podiatrist. Through personal observations he knew that Dr. Cain acted with extreme care both before and after an operation. Dr. Albert R. Brown, a podiatrist, licensed in six states and a Canadian province, and chief podiatrist at Elliott General Hospital in Detroit, Michigan for a number of years, testified that there were at least twenty different procedures that could have been used on Staudt and the procedure chosen by Dr. Cain was appropriate.

After the third hearing in this matter and after the Board had issued its findings of fact and conclusions of law, Cain's attorney at his third hearing, Mr. Bob Scott, filed a petition for review with the Pulaski County Circuit Court. Nowhere in that petition is any question raised regarding any legal issue. It simply asks that the circuit court review the findings of the Board. The circuit court heard further testimony from Dr. Cain which, essentially, regarded his experience and reputation. After that, the court issued two relevant findings: There was substantial evidence to support the Board's findings and the Board did not act arbitrarily.

At no time did Dr. Cain's counsel argue to the circuit court that there was anything improper in the notice to Dr. Cain, the board had no authority to act as it did or any impropriety existed except the substantiality of the evidence. Now on appeal, for the first time, five legal arguments are raised with regard to why the circuit court's judgment

should be reversed and the Board's findings dismissed. First, it is argued that Ark. Stat. Ann. § 72-307 (Repl. 1979) specifically defines what "grossly unprofessional" conduct is, and it does not include the misconduct attributed to Dr. Cain by the Board. While it is conceded the Board has authority to promulgate rules and regulations, it is argued these rules cannot exceed the limits of Ark. Stat. Ann. § 72-307. Second, it is argued that the Board's rules and regulations had not been filed in the Circuit Court of Benton County as required by law and were therefore ineffective. The record reflects that they were filed with the Secretary of State and mailed to the Benton County Circuit Clerk but not filed. A copy of them was provided to counsel for Cain before the first hearing. Third, it is argued that Cain was denied a fair and impartial hearing because some of the Board members were prejudiced as evidenced by their questions during the hearing. At the third hearing counsel for Cain invited the Board to ask all the questions rather than use the usual format of counsel asking questions. Fourth, it is argued that a fair notice was not given to Dr. Cain because he was not notified that any inquiry would be made regarding medical records. His counsel at the first two hearings stipulated that twelve records could be considered by the Board. Fifth, it is argued that Ark. Stat. Ann. § 72-307 requires that both unprofessional conduct *and* dishonest conduct must be found, and since the Board found no dishonest conduct the findings must fail. Finally, it is argued there was no substantial evidence to uphold the Board's order.

Since the only issue presented to the circuit court was that of substantial evidence, that is the only issue we can consider on appeal. *Wilson* v. *Lester Hurst Nursery, Inc.,* 269 Ark. 19, 598 S.W. 2d 407 (1980); *Sweeney* v. *Sweeney,* 267 Ark. 595, 593 S.W. 2d 21 (1980); *Jones* v. *Reed,* 267 Ark. 237, 590 S.W. 2d 6 (1979). Considering that issue, we recognize that it is the duty of an administrative board, such as the Podiatry Board, to hear the evidence, decide the credibility of witnesses and make findings of fact. *Terrell Gordon* v. *Gordon L. Cummings,* 262 Ark. 737, 561 S.W. 2d 285 (1978); *Arkansas Savings & Loan Association Board* v. *Central*

*Arkansas Savings & Loan Association,* 256 Ark. 846, 510 S.W. 2d 872 (1974).

Our review of an administrative decision is to be based on the entire record, not merely on that evidence that supports the administrative ruling. In that review the record must reflect substantial evidence for the Board's findings. *White County Guaranty Savings & Loan v. Farmers & Merchants Bank of Des Arc,* 262 Ark. 893, 562 S.W. 2d 582 (1978). But it is not the place of the circuit court or us to substitute our judgment for that of the Board as to the facts.

It is not undisputed that the records were inadequate. The Board chose to believe Mr. Staudt and the witnesses called by the state regarding the malpractice finding and certainly there is substantial evidence in the record to support that finding.

Affirmed.

PURTLE, J., dissents.

JOHN I. PURTLE, Justice, dissenting. I must dissent from the majority opinion for several reasons. First is that the findings of the Board did not comply with the terms of the applicable statute. Under Ark. Stat. Ann. § 72-307 (Repl. 1979), before revoking a license the Board must find a podiatrist to be guilty of grossly unprofessional and dishonest conduct. No such findings were made in this case. The words of the statute should be interpreted in their accepted meaning in common language. *Hicks v. Arkansas State Medical Board,* 260 Ark. 31, 537 S.W. 2d 794 (1976). Therefore, the findings are insufficient to allow the Board to revoke the license of the appellant. Ark. Stat. Ann. § 72-307 (a) states in part:

> The words "unprofessional and dishonest conduct" shall be held to mean: The wilful betrayal of a professional secret, having professional connections with, or lending the use of one's name to an unregistered podiatrist, or having professional connection with any one who has been convicted in any court of

any criminal offense whatsoever; being guilty of offense involving moral turpitude, habitual intemperance, or being habitually addicted to the use of morphine, opium, cocaine or other drugs for other use than legal and legitimate purposes.

Another matter which was wrong with the proceeding below was that the rules had not been filed in the Circuit Court of Benton County as required by law. The Board should at least be expected to comply with the law itself before taking away the license of any person engaged in the practice of podiatry.

I realize that the majority is correct in holding that our review on administrative decisions is based on the entire record and that the record must reflect substantial evidence to support the findings of the Board. *White County Guaranty Savings & Loan Ass'n.* v. *Farmers & Merchants Bank of Des Arc,* 262 Ark. 893, 562 S.W. 2d 582 (1978). However, in the present case four podiatrists testified on behalf of the appellant and two of them testified that appellant used extreme care both before and after operations. Summed up, the testimony of the four podiatrists called on behalf of the appellant was highly favorable to him. No place in the record do I find any statement that the appellant was guilty of dishonesty. Therefore, it is my opinion that there is no substantial evidence upon which to base a finding that the appellant was guilty of "grossly unprofessional and dishonest conduct." Consequently I would reverse and dismiss.