## ARKANSAS STATE BANK COMMISSIONER and Merchants and Farmers Bank, West Helena, Arkansas v. BANK OF MARVELL

90-106                                    804 S.W.2d 692

Supreme Court of Arkansas
Opinion delivered February 25, 1991

*Steve Clark*, Att'y Gen., by: *J. Denhammcclendon*, Asst. Att'y Gen., for appellant Arkansas State Bank Commissioner.

*Mitchell & Roachell*, by: *David E. Simmons*, for Merchants and Farmers Bank.

*Stephen E. Safly*, and *Roscopf & Higgins*, by: *Charles B. Roscopf*, for appellee Bank of Marvell.

STEELE HAYS, Justice. The Arkansas State Bank Commission approved an application of Merchants and Farmers Bank of West Helena, pursuant to Ark. Code Ann. § 23-32-1203 (Supp. 1989), to open a branch bank in Marvell, Arkansas, over the protest of the Bank of Marvell. Bank of Marvell appealed to the

Circuit Court of Pulaski County where the order was reversed and the Commissioner was directed to deny the application.

The Bank Commissioner and Merchants and Farmers have now appealed from the circuit court, charging the circuit court with error in holding, first, there was no substantial evidence to support the findings of fact of the Commissioner that the public convenience and necessity would be promoted by the approval of the application and, second, in exceeding its authority. In the alternative, appellants ask that the case be remanded to the Commissioner for further proceedings.

We agree with the appellants that there was substantial evidence to support the findings of the Bank Commissioner and, accordingly, we reverse the judgment of the circuit court and remand to the Bank Commissioner for the entry of an order consistent with this opinion.

The applicable standard of review has been often stated. The rules governing judicial review of decisions of administrative agencies are the same for both the circuit and appellate courts. This review is limited in scope and such decisions will be upheld if supported by substantial evidence and not arbitrary, capricious or characterized by an abuse of discretion. *Arkansas Alcoholic Beverage Control Board* v. *King*, 275 Ark. 308, 629 S.W.2d 288 (1982); *Arkansas Real Estate Commission* v. *Harrison*, 266 Ark. 339, 585 S.W.2d 34 (1979). Administrative action may be regarded as arbitrary and capricious only where it is not supportable on any rational basis. *Partlow* v. *Arkansas State Police Commissioner*, 271 Ark. 351, 609 S.W.2d 23 (1980). It has been said that the appellate court's review is directed, not toward the circuit court, but toward the decision of the agency. *Green House, Inc.* v. *Arkansas Alcoholic Beverage Control Division*, 29 Ark. App. 229, 780 S.W.2d 347 (1989). This is so because administrative agencies are better equipped by specialization, insight through experience, and more flexible procedures than courts, to determine and analyze legal issues affecting their agencies. *First National Bank* v. *Arkansas State Bank Commissioner*, 301 Ark. 1, 781 S.W.2d 744 (1989). Finally, the interpretation of statutes by an administrative agency, while not conclusive, is highly persuasive. *Arkansas Contractor's Licensing Board* v. *Butler Construction Co.*, 295

Ark. 223, 748 S.W.2d 129 (1988).

With those principles in mind, we turn to the evidence presented to the Commissioner. The Commissioner heard testimony on both sides of the question. Witnesses on behalf of Merchants and Farmers included Marvell Mayor Alma Norton, Thomas R. Hill, William B. Simmons, Gordon White and Jerry Kelley and on behalf of the Bank of Marvell, Dr. Charles Venus and Gibson Turley.

Mr. Hill, a CPA and bank consultant, testified that Merchants and Farmers had $6.4 million in loans and $6 million in deposits in the Marvell, Poplar Grove and Turner area—a clear indication that banking services were not available in Marvell because people do not travel fifteen or more miles for basic banking services unless forced to. He characterized as "astonishing" and "shocking" the Bank of Marvell's failure to meet the credit needs of the trading area of Marvell, noting that the bank's loans equaled only eight or nine percent of its total assets, placing the bank in the zero percentile, in contrast to an average loan-to-deposit ratio of forty-five percent for banks of like size. Hill said he had seen banks the size of the Bank of Marvell in the third or fourth percentile, but never "dead last in the whole country in the category of performance." He testified that at the end of 1987 the Bank of Marvell had a total of $114,000 in agricultural loans, not enough for a single farmer to plant, which he called "incredible." He said from 1983 to 1987 the bank's loans shrank by $5,000 at the same time its total deposits increased by $3.4 million; that the bank had had no loan losses for the past five years. Hill stated that when a bank has no loan losses and a zero loan-to-deposit ratio, it means the bank is lending money only to those customers who do not need to borrow.

There was much additional testimony pro and con, that Marvell's 1,650 residents have 461 checking accounts and 184 savings accounts with Merchants and Farmers Bank, that economic conditions in Marvell were stagnant and depressed and an additional bank would lead to destructive competition.

The appellee submits that the findings of the Commissioner recite merely that the convenience and necessity of Farmers and Merchants' existing customers would be served by the opening of a branch in Marvell, whereas the law requires a

showing that the convenience and necessity of the general public will be served. Granted, the language of the Commissioner's order ostensibly supports that inference. But that particular wording does not imply that only the existing customers would benefit. The testimony of Thomas R. Hill refutes argument to the contrary. Asked on cross-examination if his testimony referred specifically to the convenience of existing customers, he answered:

> No, I would disagree with that. . . .When you have the only bank physically located in Marvell, clearly unwilling to make loans to anybody except the most creditworthy people, the highest two or three percent creditworthy people in the area, *then when you build another branch there, you clearly have increased the convenience and needs of the whole community.* Some of the demographic data we have seen, an enormous percentage of the people in this part of — in Phillips County don't even have a vehicle. Imagine the inconvenience to somebody that doesn't have a car to try to get 15 miles east to West Helena to borrow money or cash a check. *The convenience and needs of this entire community will clearly be enhanced one minute after this branch opens.* [Our emphasis.]

Even the order itself, examined in its entirety, demonstrates the finding was not meant to be limited to existing customers. The Commissioner found, for example, that many people in the Marvell trade area have to travel to Helena or West Helena for banking services and that local conditions in the Marvell trade area provide reasonable promise of successful operation of the branch. The findings refer to letters from interested parties, several of which assert that the granting of the application would be in the best interest of all the residents of Marvell and the surrounding area.[1] The conclusions set out in the order include a provision that the *public* convenience and necessity will be promoted by the establishment of the proposed branch. Finally, the order specifically refers to Ark. Code Ann. § 23-32-1203(f) (1987), which makes the approval of a branch bank dependent on a finding by the Arkansas Bank Commissioner that the conve-

---

[1] Edoe, Inc.; Davidson Farm Products; Marvell Wood Products, Inc.

nience and necessity of the public would thereby be served and we are unwilling to conclude that the Bank Commissioner failed to understand this fundamental statutory responsibility when the law requires to the contrary that we defer to his discretion in a specialized field of regulation. *Arkansas State Highway Commission* v. *White Advertising International*, 273 Ark. 364, 620 S.W.2d 280 (1981). While we look to the language in which his order is couched, we also look to whether the evidence supports his ruling, and of that there can be no doubt. *Nakdimen* v. *Brazil*, 137 Ark. 188, 208 S.W. 431 (1919); *Little Rock Traction Co.* v. *Kimbro*, 75 Ark. 211, 87 S.W. 121 (1905).

Mr. Simmons, president of Merchants and Farmers, testified that the bank planned to offer all services in Marvell that were offered to its West Helena and Helena customers except safe deposit boxes. Those services include student loans, Farmers Home Administration guaranteed farm loans, home mortgage financing, home improvement loans, agricultural loans, FHA and VA loans, SBA loans and consumer loans of all types. In contrast, witnesses for the Bank of Marvell testified that the bank had stopped making Farmers Home Administration loans two or three years earlier and preferred not to make SBA, FHA, VA or student loans. Thomas R. Hill's testimony included the observation that the Bank of Marvell would not be adversely affected because a branch bank in Marvell would draw business which the Bank of Marvell had made a conscious decision to forego by credit policies adopted years earlier. The Commissioner conducted a hearing, observed the witnesses and determined the proper weight to be accorded their testimony, and he concluded from the evidence that the application should be granted. *White County Guaranty Savings & Loan Association* v. *Farmers & Merchants Bank*, 262 Ark. 893, 562 S.W.2d 582 (1978). When the evidence in its entirety is given its strongest probative force consistent with the Commissioner's actions, we consider the evidence to be both substantial and compelling in support of the Commissioner's approval of the application. No other conclusion is possible.

Reversed and remanded to the Arkansas Bank Commissioner to enter an order approving the application consistent with this opinion.

BROWN, J., dissents.

608

Robert L. Brown, Justice, dissenting. In this case it was clear from the outset that Merchants and Farmers Bank applied for the branch bank in Marvell to benefit existing customers. The bank's amendment to its application dated December 29, 1988, states as much:

Our bank has a substantial customer base in this area (we have used the zip codes for Marvell (72366), Poplar Grove (72374) and Turner (72383) to approximate the area) as depicted in the following table:

| Type of Account | Number of Accounts or Total Dollars of Accounts |
| --- | --- |
| Checking | 461 accounts |
| Savings | 184 accounts |
| Certificates of Deposit | $3,237,540 |
| Loans | $6,401,617 |

It is presently very inconvenient for these customers to travel to our west — West Helena branch as driving time from Turner (one of the farthest points) is 35 minutes while driving time from Kindall (one of the closest points) is 15 minutes. We are not locating the branch in Marvell to capture a share of new business, as we agree the area is stagnant or losing population, but to serve *our existing customer base.* (Emphasis added.)

Serving existing customers was a primary focus of the applicant during the hearing before the Bank Commissioner, and the Bank Commissioner's findings of fact evidence that emphasis:

22. Based upon the Application, the testimony of Bill Simmons, Jerry Kelley, Gordan White and Alma Norton, it is found that the Applicant has a substantial number of *existing deposit and loan customers* in the *Marvell trade area, who will be better served by the Applicant through a branch in Marvell.* The Applicant has approximately 461 checking accounts, 184 savings accounts, $3,237,540 deposited in certificates of deposit and $6,401,617 in loans with *existing customers* living in the Marvell trade area. A substantial amount of the loans

are made for agriculture purposes. Applicant's customers living in Marvell have to drive approximately 15 miles to the nearest branch and customers living in other areas have to drive even farther.

. . .

25.     Based upon the testimony of Bill Simmons, Thomas N. Hill, Jerry Kelley, Gordan White and Alma Norton, the Application and other evidence, it is found that the public convenience and necessity of the Applicant's *existing customers* will be promoted by the establishment of the branch.

26.     Based upon the Application, the testimony of Bill Simmons, Gordan White and Thomas N. Hill, it is found that local conditions in the Marvell trade area assure reasonable promise of successful operation of the branch. The projected income statements of the proposed branch appear conservative and indicate that the branch would be operated profitably with *existing customers*. (Emphasis added.)

State law confirms that in order to approve a new full service branch office, the Bank Commissioner must find that the branch "will serve the public convenience and necessity:"

(a)     The Bank Commissioner shall have the authority to approve the application for a state-chartered bank to establish a full service branch, if he shall find upon investigation that the establishment of the branch is economically feasible and will serve the public convenience and necessity.

. . .

(f)     The commissioner's decision on a branch bank application will be in the form of final findings of fact, conclusions of law, and an order given by the commissioner within a reasonable time period following the expiration of the fifteen (15) calendar day formal protest period. The findings of fact shall include findings that:

(1)     Public convenience and necessity will be

promoted by the establishment of the proposed full service branch . . . .

Ark. Code Ann. § 23-32-1203 (Supp. 1989).

Other jurisdictions have made it clear under comparable language that the entire public is what is meant by such statutes and not the customers of any one bank, which could be better served by a new branch. *See Bank of New Bern* v. *Wachovia Bank & Trust Company, N.A.*, 353 F. Supp. 643, (E.D. N.C. 1972); *Citizens National Bank of Southern Maryland* v. *Camp*, 317 F. Supp. 1389 (D. Md. 1970).

The finding of public convenience and necessity required under Arkansas statues is not limited to existing bank customers but must embrace the public as a whole. Yet it is obvious that the Bank Commissioner's findings are premised on existing bank customers as opposed to the general public, which renders his order fatally deficient. The majority, however, chooses to deemphasize the language of the Bank Commissioner in his findings as well as the language in the bank's amended application.

I would affirm the trial court's judgment.