NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted July 7, 2008[*]
Decided July 7, 2008

**Before**

RICHARD D. CUDAHY, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

No. 07-4003

| | |
|---|---|
| JOHN W. CAIN,<br>    *Plaintiff-Appellant,* | Appeal from the United States District<br>Court for the Southern District of Illinois. |
| *v.* | No. 07-cv-0451-MJR |
| RONALD E. OSMAN, et al.,<br>    *Defendants-Appellees.* | Michael J. Reagan,<br>*Judge.* |

**O R D E R**

In this lawsuit under the diversity jurisdiction, Missouri citizen John W. Cain claims that southern-Illinois attorney Ronald Osman, two lawyers working for Osman, and Osman's law firm—all Illinois citizens—stole Cain's proposal to bring a *qui tam* action against a St. Louis-based insurance company. The district court dismissed Cain's complaint for failure to state a claim. We affirm that dismissal.

---

[*]After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R. App. P. 34(a)(2).

We draw all inferences in the light most favorable to Cain.  *See Malone v. Nielson*, 474 F.3d 934, 935 (7th Cir. 2007).  In August 1998, Cain approached Osman about filing a *qui tam* lawsuit against General American Life Insurance Company under the False Claims Act. *See* 31 U.S.C. §§ 3729-33.  Cain had been a podiatrist before losing his medical license.  The reason, according to the complaint, is that he was performing "excessive Medicare surgeries," though malpractice also seems to have played a part.  *See Cain v. State Bd. of Podiatry*, 834 S.W.2d 260, 261 (Mo. Ct. App. 1992); *Cain v. Arkansas State Podiatry Examining Bd.*, 628 S.W.2d 295, 296 (Ark. 1982).   He told Osman that, in his role as a Medicare provider, he had acquired information that would support a false-claims action against General American.  In two separate mailings, Cain sent the lawyer his personal files totaling 400 typewritten pages plus exhibits; Harry Riggs, a former General American employee, was mentioned in those files.  On September 10, 1998, Osman wrote Cain in response to his first mailing and told him that the law firm would "not be opening a file" or "taking any action" on Cain's behalf.  Osman explained in his letter that, after reviewing Cain's materials, he did "not believe" that Cain had a "viable action under the False Claims Act."  On September 18, Osman returned Cain's second mailing and reiterated that his law office would not be taking any action to assist Cain.

Seven months later, however, Osman filed a *qui tam* action against General American on behalf of relators Harry Riggs and Nancy Riggs.  *See United States ex rel. Riggs v. Gen. Am. Life Ins. Co.*, No. 4:99-cv-00608-RWS (E.D. Mo. filed Apr. 16, 1999).  The government took over the litigation and settled it in June 2002 for more than $70 million. Cain maintains that Osman purloined information from his files and used it to file *Riggs*, thus cheating him out of millions.  He sued Osman and the other defendants in the Southern District of Illinois, claiming that they had committed the Illinois torts of fraud, outrage, bad faith, and conspiracy.  The district court granted the defendants' motion to dismiss the complaint for failure to state a claim.  *See* FED. R. CIV. P. 12(b)(6).  We review that dismissal de novo.  *Malone*, 474 F.3d at 935.

The elements of common-law fraud in Illinois are "(1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from reliance on the statement."  *Wernikoff v. Health Care Serv. Corp.*, 877 N.E.2d 11, 16 (Ill. App. Ct. 2007).  The federal rules impose a higher pleading standard for fraud claims than typical notice pleading: "a party must state with particularity the circumstances constituting fraud."  FED. R. CIV. P. 9(b); s*ee United States ex rel. Fowler v. Caremark RX, L.L.C.*, 496 F3d. 730, 740 (7th Cir. 2007).  This requirement means that a "complaint alleging fraud must provide the who, what, when, where and how."  *Id.* (internal quotation marks and citations omitted).

Cain's fraud claim falters on all five elements, but we can limit our discussion to the first. Cain contends that his complaint alleges a statement of fact that is materially false: Osman's representation that he did not believe Cain had a "viable action under the False Claims Act." This statement, however, is a legal opinion, not a representation of fact. It cannot support a fraud claim because, in "an action for fraud, the alleged misrepresentation must be one of fact and not an expression of opinion." *People ex rel. Peters v. Murphy-Knight*, 618 N.E.2d 459, 463 (Ill. App. Ct. 1993); *see Equity Capital Corp. v. Kreider Transp. Serv., Inc.*, 967 F.2d 249, 254 (7th Cir. 1992) ("Under Illinois law, 'a representation is one of opinion rather than fact if it only expresses the speaker's belief, without certainty, as to the existence of a fact.'" (quoting *Marino v. United Bank of Ill., N.A.*, 484 N.E.2d 935, 937 (Ill. App. Ct. 1985))). Thus, putting aside that Cain always was free to consult other lawyers about his prospects for suing American General, Osman's opinion that Cain did not have a claim under the False Claims Act could not constitute a "false statement of material fact." Moreover, Osman's successful representation of Harry Riggs—a former American General employee turned whistle blower—does nothing to undermine the conclusion that Osman was expressing a legal opinion to Cain. Cain, who attributes the loss of his license to "excessive Medicare surgeries," does not even suggest any similarity between the *Riggs* litigation and the content of the files he disclosed to Osman—except that his files documented his own contacts with Harry Riggs when submitting Medicare claims to American General. That is not enough to satisfy his burden to plead the "who, what when, where, and how" of a fraud scheme.

Cain also claims that Osman's actions constitute the tort of outrage. Outrage is a common-law tort that "originated as a catchall to permit recovery when an existing tort claim was unavailable, but in the narrow instances in which an actor's conduct exceeded all permissible bounds of a civilized society." RESTATEMENT (THIRD) OF TORTS § 45 cmt. a (Tentative Draft No. 5, 2007). In Illinois the tort of outrage is cited infrequently, and when it is, it tends to be used synonymously with intentional infliction of emotional distress. *See Robertson v. Travelers Ins. Co.*, 448 N.E.2d 866, 868-69 (Ill. 1983); *Feltmeier v. Feltmeier*, 777 N.E.2d 1032, 1037-38 (Ill. App. Ct. 2002); *Doe v. Chand*, 781 N.E.2d 340, 345, 347 (Ill. App. Ct. 2002); *Calcagno v. Personalcare Health Mgmt., Inc.*, 565 N.E.2d 1330, 1337 (Ill. App. Ct. 1991). Under Illinois law, a plaintiff claiming intentional infliction of emotional distress must prove that the defendant intentionally or recklessly engaged in "extreme and outrageous conduct" that caused severe emotional distress. *Sornberger v. City of Knoxville, Ill.*, 434 F.3d 1006, 1030 (7th Cir. 2006); *see Lopez v. City of Chi.*, 464 F.3d 711, 720 (7th Cir. 2006). As with the tort of outrage, extreme and outrageous conduct is conduct that "goes beyond all bounds of decency and is considered intolerable in a civilized community." *Lopez*, 464 F.3d at 720 (internal quotation marks, brackets, and citation omitted).

The defendants' alleged misdeed did not constitute "extreme and outrageous conduct" under Illinois law. *See Pugh v. Tribune Co.*, 521 F.3d 686, 699 (7th. Cir. 2008) ("[A] plaintiff can plead himself out of court by alleging facts that show there is no viable claim."). The factual scenario that Cain essentially alleges—that in reviewing Cain's files Osman and his codefendants gleaned a *qui tam* theory and the name of a plaintiff to front it—is unseemly if true but does not come close to describing conduct that goes "'beyond all possible bounds of decency.'" *See Kleidon v. Rizza Chevrolet, Inc.*, 527 N.E.2d 374, 377 (Ill. App. Ct. 1988) (quoting Restatement (Second) of Torts § 46, cmt. d (1965)). So the outrage claim is doomed at the outset, but it's also worth noting that Cain does not allege that the conduct of the *defendants* actually caused him emotional distress, much less actionable distress "so severe that no reasonable person could be expected to endure it." *See Lifton v. Bd. of Educ. of City of Chi.*, 416 F.3d 571, 579 (7th Cir. 2005). Cain's gripe is not that he suffered emotionally or even that he lost money out of his own pocket; instead, he simply contends that the defendants deprived him of the *financial reward* that, under the False Claims Act, motivates *qui tam* plaintiffs to step forward and serve as "private attorneys general." *See United States v. Bank of Farmington*, 166 F.3d 853, 857-58 (7th Cir. 1999); *United States ex rel. Hall v. Tribal Dev. Corp.*, 49 F.3d 1208, 1213 (7th Cir. 1995).

Finally, Cain's claims of bad faith and conspiracy fare no better than his other claims. "Bad faith" is a label that Illinois courts sometimes apply in actions sounding in tort or contract, e.g., fraud, negligence, or breach of contract, but there is no independent tort of "bad faith" in Illinois outside of certain insurance cases involving an insurer's duty to act in good faith in responding to settlement offers. *See Great Lakes Dredge & Dock Co. v. City of Chi.*, 260 F.3d 789, 797 (7th Cir. 2001); *Twin City Fire Ins. Co. v. Country Mut. Ins. Co.*, 23 F.3d 1175, 1179-80 (7th Cir. 1994); *Voyles v. Sandia Mortgage Corp.*, 751 N.E.2d 1126, 1131 (Ill. 2001); *Cramer v. Ins. Exch. Agency*, 675 N.E.2d 897, 903-04 (Ill. 1996). Moreover, although Illinois does recognize a claim for civil conspiracy, there first must be an underlying tort, which, in Cain's situation, there is not. *See Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 509 (7th Cir. 2007). Cain's allegations perhaps suggest an ethical breach, *see* ILL. R. PROF'L CONDUCT 1.6(a)*,* but "[t]he mere fact that an attorney may have violated professional ethics does not, in and of itself, give rise to a cause of action for damages," *Owens v. McDermott, Will & Emery*, 736 N.E.2d 145, 157 (Ill. App. Ct. 2000); *see Doe v. Roe*, 681 N.E.2d 640, 649 (Ill. App. Ct. 1997).

For the foregoing reasons, the judgment is AFFIRMED.